**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

IRONSHORE INDEMNITY INC.,

    **Plaintiffs,**

        **v.**                        **Civil No.** 23-1370 (FAB)

VILLA MARINA YACHT HARBOR INC.,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Villa Marina Yacht Harbor Inc.'s ("defendant" or "Villa Marina")'s motion to dismiss. (Docket No. 9.) It moves to dismiss plaintiff Ironshore Indemnity Inc.'s ("plaintiff" or "Ironshore") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) ("Rule 12(b)(1)" and "Rule 12(b)(6)"). For the reasons set forth below, Villa Marina's motion to dismiss is **DENIED.** (Docket No. 9.)

**I.  Factual Background[1]**

Plaintiff Ironshore is a corporation that sells marine insurance policies in Puerto Rico and elsewhere in the United States. On or about November 7, 2014, Ironshore issued a marine general liability insurance policy ("the policy") to defendant

---

[1] The Court construes the following facts from the complaint "in the light most favorable to the plaintiff" and "resolve[s] any ambiguities" in the plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011) (discussing the Rule 12(b)(6) standard of review).

Villa Marina.  (Docket No. 1 Ex. 1.)  Plaintiff alleges that at some point in 2015, Mr. José R. Busquets-Zalduondo ("Busquets"), a client of Villa Marina, notified the defendant that his yacht was improperly stored at Villa Marina and, consequently, was infested with termites.  (Docket No. 1).

According to the complaint, Villa Marina did not give notice to Ironshore of Mr. Busquets' claim within the time required by the marine insurance policy.  Id.  Instead, Ironshore was informed of the issue when an attorney for Mr. Busquets contacted Ironshore's agent in Puerto Rico to inquire about the status of an alleged claim under the policy for the damage to Mr. Busquets' yacht.  Id.  Plaintiff then informed Villa Marina that it was denying coverage for the alleged damage to the yacht because Ironshore was prejudiced by the late reporting of the incident. Ironshore also alleges that the relevant sections of the policy issued to Villa Marina and applicable Puerto Rican law release it from any obligation to cover defendant's losses or expenses relating to the alleged damage to Mr. Busquets' yacht.  Id.

Plaintiff requests this Court issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("Declaratory Judgement Act"), stating that the marine insurance policy issued by Ironshore to Villa Marina does not cover the above

discussed incident and that any claim by the defendant relating to Mr. Busquets' yacht are time barred.

On August 21, 2023, defendant filed a motion to dismiss Ironshore's complaint pursuant to Rules 12 (b)(1) and (6). (Docket No. 9.)  Villa Marina argues that this Court lacks admiralty jurisdiction over the claim because the yacht in question is a "dead ship" and not a vessel used for navigational purposes.  Id. Defendant also argues that Ironshore's complaint fails to state a claim upon which relief can be granted and that the Court should use its discretion pursuant to the Declaratory Judgment Act and stay or dismiss this case until a parallel proceeding before the Office of the Commissioner of Insurance of Puerto Rico ("OCS") is resolved.  Id.

## II.  Legal Standard

Pursuant to Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level."  Id. at 555.  In doing so, a court is "obligated to view the facts of the complaint in the

light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011).

Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. See e.g., Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R.1998). Consequently, the party asserting it has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); Droz-Serrano v. Caribbean Records Inc., 270 F.Supp.2d 217 (D.P.R. 2003). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002). Rule 12(b)(1) dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123 (D.P.R. 2007).

## III. Discussion

### A.   Subject Matter Jurisdiction

Defendant's motion to dismiss proports to be a Rule 12(b)(6) motion, arguing in the motion's preliminary statement that Ironshore's complaint fails to state a claim upon which relief can be granted. (Docket No. 9 at p. 1.) The main thrust of Villa Marina's argument, however, is that the court does not have admiralty jurisdiction over the claims because Busquets' yacht is a "dead vessel" and not used for navigational purposes. See Mullane v. Chambers, 333 F.3d 322, 328 (1st Cir. 2003); Puerto Rico Ports Auth. v. Umpierre-Solares, 456 F.3d 220, 222 (1st Cir. 2006). Defendant's argument questions this Court's jurisdiction over the subject matter of the case and is therefore more appropriately characterized as a Rule 12(b)(1) motion.[2] Regardless of the procedural posture, Villa Marina's challenges to the Court's admiralty jurisdiction are unavailing.

Admiralty jurisdiction in insurance cases regularly applies to disputes regarding the interpretation or enforcement of marine insurance contracts. Inversiones Calmer, S.A. v. C.E. Heath & Co., 681 F.Supp. 100, 102 (D.P.R. 1988) (citing Dunham, 78 U.S. 1, 11; Wilburn Boat Co., 348 U.S. 310). As this Court has

---

[2] Defendant's heading reads like a Rule 12(b)(6) motion, but it indicates that, "In this case there is no admiralty jurisdiction." (Docket No. 9 at p. 12.)

held previously, "admiralty subject matter jurisdiction exists [when] the policy at issue is a marine insurance policy," regardless of whether the object in question is a "vessel" under maritime law. Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs., Inc., 974 F. Supp. 2d 64, 74 (D.P.R. 2013) (internal quotation marks omitted). Courts widely recognize that federal admiralty jurisdiction attaches in actions based upon marine insurance policies. See, e.g., New England Mut. Marine Ins. Co. v. Dunham, 78 U.S. 1, 30–36 (1870) (finding that admiralty jurisdiction exists over policies of marine insurance); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313 (1955) ("Since the insurance policy here sued on is a maritime contract[,] the Admiralty Clause of the Constitution brings it within federal jurisdiction."); Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 54 (1st Cir. 1995) ("The propriety of maritime jurisdiction over a suit involving a marine insurance policy is unquestionable.")

Courts have held, however, that for an insurance policy to constitute a maritime contract, the interests insured, not merely the risks insured against, must be maritime in nature. Acadia Ins. Co. v. McNeil, 116 F.3d 599, 603 (1st Cir. 1997) (finding admiralty jurisdiction because the insurance policy "insures a maritime interest (the boat) and insures primarily (if

not exclusively) against risks associated with marine ventures");
Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship, 738 F.2d 1035, 1036
(9th Cir. 1984) ("For an insurance policy to be within admiralty
jurisdiction, the interests insured, and not simply the risks
insured against, must be maritime.")

        Ironshore's complaint states at paragraph ten that the
policy provided to Villa Marina is for marine insurance. (Docket
No. 1.)  Pursuant to the Rule 12(b)(1) standard of review, the
Court takes this fact in the light most favorable to the plaintiff.
In an abundance of caution, however, the Court examines the policy
itself to ensure it is a maritime contract.  A closer inspection
of the policy shows its coverage extends to "moorage, fueling,
storage ashore and afloat . . ." along with other activities
associated with the day-to-day work of a marina. (Docket No. 1
Ex. 1.)  Furthermore, the coverage almost exclusively involves
"marine general liability" and covers losses relating to marine
perils in the operation of Villa Marina.  Id.  The facts set forth
in the complaint properly allege that the policy insures all
interests that are maritime in nature.  See Acadia Ins. Co., 116
F.3d at 603.  As the complaint also alleges, the controversy before
the Court involves the interpretation of a marine insurance policy,
bringing it squarely withing the Court's admiralty jurisdiction.
See Inversiones Calmer, 681 F.Supp. 102.

Civil No. 23-1370 (FAB)                                                 8

**B.   Discretionary Jurisdiction**

        The bulk of the defendant's motion to dismiss petitions
this Court to exercise its discretionary jurisdiction pursuant to
the Declaratory Judgment Act and Brillhart v. Excess Ins. Co. of
America, 316 U.S. 491 (1942); and decline to hear this case.
Abstention under the Declaratory Judgment Act (also known as
"Brillhart abstention") is one of the rare exceptions to a district
court's duty to adjudicate a controversy properly before it.   The
Declaratory Judgment Act provides, in its relevant section:

> (a)   In a case of actual controversy within its
> jurisdiction . . . any court of the United States,
> upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any
> interested party seeking such declaration, whether
> or not further relief is or could be sought. Any
> such declaration shall have the force and effect of
> a final judgment or decree and shall be reviewable
> as such. 28 U.S.C. § 2201(a).

        The Supreme Court, in Brillhart and its progeny, has
interpreted the ability for a district court to exercise its
discretion in declaratory judgement narrowly.  See Wilton v. Seven
Falls Co., 515 U.S. 277 (1995).  Under Brillhart, the question for
a district court is whether the questions in controversy between
the parties to the federal suit, and which are not foreclosed under
the applicable substantive law, can better be settled in
proceedings pending in a state court.  Id. at 285.  While the
Supreme Court in Wilton declined to set forth a test to determine

the propriety of abstention, it cited with approval factors applied by the Court in Brillhart.  Those factors are:  (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court with an orderly and comprehensive suit pending in a state court, presenting the same issues, not governed by federal law, between the same parties.  See Id. at 283; Flectat Ltd. v. KASL Seabreeze, LLC, 257 F. Supp. 3d 152, 156 (D. Mass. 2017).

Villa Marina argues in its motion to dismiss that the Brillhart factors weigh in favor of abstention in this case. (Docket No. 9 at p. 9.)  According to the defendant, there is already a proceeding on this very matter before the Office of the Commissioner of Insurance (OCS).  Id.  Villa Marina argues that the OCS proceeding is broader in scope than this case and can provide Ironshore virtually the same remedies it seeks here.  Id. at p. 8.  Defendant also claims the OCS proceedings include Mr. Busquets and other interested parties, though it remains

Civil No. 23-1370 (FAB)                                                 10

unclear if Villa Marina and Ironshore are parties to that case.[3]
Finally, defendant argues that a stay or dismissal of this case
would promote judicial economy and help avoid litigating the same
issues twice, once before the OCS and once in federal court.
(Docket No. 9.)

        The problem with defendant's arguments is twofold.
First, the Court has nowhere near enough information to assess the
merits of defendant's Brillhart abstention claim.  Ironshore's
complaint does not refer to the OCS proceedings and the facts
outlined by both parties regarding those proceedings often
contradict each other.  Without access to the OCS proceedings
currently underway, this Court cannot assess the Brillhart factors
and decide whether to exercise its jurisdiction over the case,
abstain from deciding it, or order a stay until the OCS proceedings
end.

        Second, defendant's problem is a procedural one.
Brillhart abstention does not raise Rule 12(b)(1) jurisdictional
defects or a Rule 12(b)(6) challenge to the facial sufficiency of
the complaint.  See Eric C. Surette, J.D., Application of

---

[3] In its motion to dismiss, Villa Marina claims that "agents for Ironshore . . . already filed a response to the [OCS] complaint." (Docket No. 9 at p. 2). Meanwhile, Ironshore states in their reply that "[Villa Marina] and Ironshore are parties to the case before the OCI," only to state on the very next page that they are actually "not parties to the proceedings before the OCI." (Docket No. 11 at pp. 13, 14.) (emphasis added)  Villa Marina then asserts that Ironshore lacks standing because "Busquets did not pursue a[n] [OCS] claim against Ironshore and [Villa Marina]." (Docket No. 15 at p. 5.) (emphasis added).

Civil No. 23-1370 (FAB)                                               11

<u>Brillhart-Wilton Abstention Doctrine, in Action Seeking</u>
<u>Declaratory Relief Under the Declaratory Judgment Act, 28 U.S.C.</u>
<u>§§ 2201, 2202</u>, 63 A.L.R. Fed. 2d 51 (Originally published in 2012).
In fact, <u>Brillhart</u> abstention does not fit into any of the
categories of motions enumerated in Rule 12(b). <u>Id.</u>; Fed. R. Civ.
P. 12(b). With the information provided at this stage in the
proceedings, the Court can only look to the facts of the complaint
in the light most favorable to the plaintiffs to determine (1) if
jurisdiction exists and (2) whether the complaint states a claim
to relief that is plausible on its face. See <u>Murphy</u>, 45 F.3d at
522; <u>Twombly</u>, 550 U.S. at 570. Ironshore has met both these
burdens by invoking this Court's admiralty jurisdiction through
its marine insurance policy and pleading a plausible claim arising
out of damage to Mr. Busquets' yacht. (Docket No. 1 at p. 2.)

**IV. Conclusion**

For the above reasons, defendant Villa Marina Yacht Harbor
Inc.'s motion to dismiss is **DENIED**. (Docket No. 9.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 17, 2023.

                              <u>s/ Francisco A. Besosa</u>
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE